IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

MONSANTO COMPANY and
MONSANTO TECHNOLOGY, LLC,

     Plaintiffs,

v.

CHRISTOPHER PONDER and
CHRIS PONDER FARMS, LLC,

     Defendants,

CIVIL ACTION FILE NO.
_____7:14-CV-13_____

## **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiffs Monsanto Company and Monsanto Technology, LLC (sometimes referred to collectively as "Monsanto"), hereby state their Complaint against Defendants Christopher Ponder and Chris Ponder Farms, LLC ("Ponder" or "Defendants").  Defendants knowingly, intentionally, and willfully committed patent infringement by using and planting saved Roundup Ready® Flex, Bollgard II®, Roundup Ready® Flex with Bollgard II® cotton seed, or combinations thereof (which was produced from Roundup Ready® Flex, Bollgard II®, and/or Roundup Ready® Flex with Bollgard II® cotton seed planted in prior years) without authorization from Monsanto.

## INTRODUCTION

A.    **Monsanto's Biotechnologies**

This case concerns revolutionary biotechnologies -- Roundup Ready® Flex, Bollgard II®, and Roundup Ready® Flex with Bollgard II® cotton seed.  These patented technologies enable cotton (and other crops) to tolerate glyphosate, a widely used agricultural herbicide, and to resist leaf and boll-feeding worm species that damage cotton bolls and reduce yields.  Glyphosate is highly effective at eliminating most weeds and is valued for its environmental benefits, including its relative lack of toxicity and its ability to bind to soil and break down quickly.  Glyphosate-based herbicides are non-selective, meaning that they cause damage to conventional crop and non-crop plants (*i.e.*, plants that have not been genetically modified to tolerate the herbicide).

Monsanto invested hundreds of millions of dollars and more than a decade of research and development in developing these biotechnologies to help farmers control weeds and avoid pest damage.  As reflected by farmers' overwhelming adoption, these technologies offer farmers significant economic, safety, and environmental benefits.  The technologies have decreased production costs for crops and they have led to a significant reduction in the amount of management time needed to grow crops, in part because they greatly simplified the treatment of weeds.

ATLANTA 5541551.1

The technologies have made weed and insect control safer.  Before the introduction of Roundup Ready® seeds, farmers often had to apply three or more different herbicides to achieve the same control of weeds that is achieved today using Roundup Ready® seeds together with glyphosate as the sole herbicide. Bollgard II® cotton reduces the need to spray fields for worm species that damage cotton plants.  Finally, the technologies have had other significant environmental benefits.  Glyphosate is recognized as more environmentally friendly than other herbicides, and Roundup Ready® technology enables farmers to reduce tillage of the soil with heavy equipment, decreasing erosion and soil loss.  The use of Bollgard II® cotton has similarly reduced the need for farmers to apply chemical pesticides to the cotton crop to prevent worm species from damaging the plants.

To commercialize its inventions, and protect its valuable intellectual property rights, Monsanto broadly licenses its technology to competitors and to individual farmers.  Farmers wishing to lawfully use the patented technology agree to abide by the terms of a license agreement (a "Technology Agreement") that provides the farmer/licensee with the permission to use the valuable technology. The Technology Agreement provides the licensed farmer, and only the licensed farmer, with the right to use the patented technology to grow a single commercial crop, the seeds of which will also contain the patented technology.  Farmers may not save seed containing the patented technology from harvested crops for

ATLANTA 5541551.1

replanting on their own fields, nor may they save seed to sell or transfer to other farmers for replanting.  A cotton farmer who wishes to grow crops from cotton seeds containing the patented technology must obtain the seed from an authorized dealer in each planting season.

**B.**     **Defendants' Conduct**

Defendant Chris Ponder is a central figure in much of the seed saving activity in the Tift County area.

Defendants have never obtained a license from Monsanto to purchase the patented seeds at issue.  Any use of the patented seeds by Defendants therefore constitutes patent infringement.  Rather than lawfully take a license and pay for the technology, Chris Ponder has for several years knowingly, intentionally, and willfully used and planted saved Monsanto's patented cotton seed, without authorization from Monsanto.  Such planting and use by Chris Ponder and Chris Ponder Farms, LLC, without authorization from Monsanto, was a willful violation of Monsanto's patent rights.

Additionally, and at or before the ginning process, Chris Ponder instructed Omega Farm Supply and Gin, through its employees and/or managers, to catch specific varieties of seed that he knew were in specific modules from cotton that Defendants harvested for the purposes of delinting and replanting that infringing seed.  In addition to admittedly using the patented technology for his own plantings

- 4 -

without authorization, Ponder delinted seed for other farmers in exchange for chemicals he uses in the delinting process, thereby contributing to the infringement by other farmers.  Thus, Ponder also committed patent infringement by selling and transferring saved and delinted cotton seed to other farmers in his farming community.

From October 2012 through August 2013, Monsanto investigated alleged delinting and planting of saved cotton seed containing Monsanto's patented biotechnologies in and around Tift County.  After investigators collected sufficient evidence of seed saving and planting, the investigators interviewed numerous farmers regarding their alleged infringing farming activities.  All of those farmers, with one exception, have agreed to meet with Monsanto and resolve their alleged infringement of Monsanto's patent rights.

Chris Ponder is the exception.  To Monsanto's current knowledge, he is the only farmer saving patented seed unlawfully, and who has refused to negotiate a settlement.

### THE PLAINTIFFS

### <u>Monsanto Company</u>

1.     Monsanto Company is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in St. Louis,

- 5 -

Missouri.  It is authorized to do and is doing business in Georgia and this judicial district.

2.      Monsanto Company is in the business of developing, manufacturing, licensing, and selling agricultural biotechnology, agricultural chemicals, and agricultural products.  After the investment of substantial time, expense, and expertise, Monsanto Company developed biotechnology that results in plants having resistance to glyphosate-based herbicides (such as Roundup Ultra®, Roundup UltraMAX®, Roundup WeatherMAX®, and Touchdown®) as well as separate biotechnology that results in plants producing Bacillus thuringiensis (B*t*) insecticidal proteins that control certain insect species (including budworms, bollworms, and armyworms) that are pests of plants, including cotton.

3.      Cotton seed containing these biotechnologies are marketed by Monsanto Company under multiple trade names, including Roundup Ready® and Roundup Ready® Flex cotton, Bollgard® and Bollgard II® cotton, and Roundup Ready® Flex with Bollgard II® cotton.

4.      Monsanto's Roundup Ready® Flex biotechnology is protected by multiple United States patents, including United States Patent Number 6,949,696 ("the '696 patent"), a true and correct copy of which is attached hereto as Exhibit "A".  The '696 patent was issued on September 27, 2005, prior to the events giving rise to this action.

- 6 -

5.     Monsanto's Bollgard II® biotechnology is protected by multiple United States patents, including United States Patent Number 7,064,249 ("the '249 patent"), a true and correct copy of which is attached hereto as Exhibit "B". The '249 patent was issued on June 20, 2006, prior to the events giving rise to this action.

6.     Monsanto Company is and has been the exclusive licensee of the '696 and '249 patents from Monsanto Technology, LLC.

## Monsanto Technology LLC

7.     Monsanto Technology, LLC is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in St. Louis, Missouri.

8.     Monsanto Technology, LLC is and has been the owner of the '696 and '249 patents prior to the events giving rise to this action.

## THE DEFENDANTS

9.     Defendant Christopher Ponder is a citizen of Georgia and resides in Tift County, Georgia, at 1185 Ty Ty Omega Road, Tifton, GA 31793.

10.     Defendant Chris Ponder Farms, LLC is an active limited liability company in the State of Georgia with its principal place of business at 1185 Ty Ty Omega Road, Tifton, GA 31793.  Upon information and belief, no member of Chris Ponder Farms, LLC is a citizen of Delaware or Missouri.

- 7 -

11.     Defendants are engaged in a farming business that involves the planting of crops, including cotton.  Upon information and belief, the Defendants farm land in Tift County, Georgia, among other locations.  Defendants farm approximately 1,300 acres, with approximately 600 to 800 acres planted annually to cotton.

12.     Defendants gin their cotton at Omega Gin, in Omega, Georgia.

## JURISDICTION AND VENUE

13.     This is an action for patent infringement arising under the patent laws of the United States of America, 35 U.S.C. § 1, *et. seq.*, including 35 U.S.C. § 271. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 because one or more of Monsanto's claims arise under the laws of the United States, as well as 28 U.S.C. §1338, granting district courts original jurisdiction over any civil action regarding patents.  Additionally, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over all of Monsanto's non-federal question claims because they form part of the same case or controversy.  Finally, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of costs and interest.

14.     This Court has personal jurisdiction over Defendants and venue is proper in this judicial district because the Defendants reside in Tift County, Georgia, a county within the Middle District of Georgia, Valdosta Division.  Venue also is

ATLANTA 5541551.1

proper in this judicial district because Plaintiffs' claims arose within this judicial district.

## GENERAL ALLEGATIONS

15.     Roundup® is a non-selective herbicide manufactured by Monsanto, which causes severe injury or destruction to plant varieties, including cotton varieties, that do not contain the patented Roundup Ready® or the Roundup Ready® Flex technology.  Cotton displays a unique and identifiable symptomology after having been sprayed with Roundup® or other herbicides containing glyphosate, unless said cotton contains the patented Roundup Ready® or Roundup Ready® Flex technology.

16.     Monsanto's Roundup Ready® Flex technology is protected under multiple United States patents, including the '696 patent.  This patent was issued and assigned to Monsanto prior to the events giving rise to this action.

17.     Monsanto's Bollgard II® technology is protected under multiple United States patents, including the '249 patent.  This patent was issued and assigned to Monsanto prior to the events giving rise to this action.

18.     Monsanto licenses the use of Roundup Ready® Flex, Bollgard II®, and Roundup Ready® Flex with Bollgard II® seed technologies only to farmers at the retail marketing level through a limited use license commonly referred to as a "Technology Agreement."

19.     Authorized licensees of Roundup Ready® Flex, Bollgard II®, and Roundup Ready® Flex with Bollgard II® seed are required to pay an established royalty (also known as a "technology fee") to Monsanto for each commercial unit of seed in addition to the price of the base germplasm.

20.     Defendants never obtained a license to use the patented seed technologies at issue and are therefore guilty of patent infringement on that fact alone.

21.     Monsanto places, on the labeling of all bags containing Roundup Ready® Flex, Bollgard II®, and Roundup Ready® Flex with Bollgard II® seed, the required statutory notice that its Roundup Ready® Flex, Bollgard II®, and Roundup Ready® Flex with Bollgard II® technologies are patented.  In particular, each bag of Roundup Ready® Flex, Bollgard II®, and Roundup Ready® Flex with Bollgard II® seed is marked with notice of at least United States Patent Nos. 6,949,696 and 7,064,249.

22.     Monsanto does not authorize (and specifically prohibits under the language of the Technology Agreement) the planting of saved Roundup Ready® Flex, Bollgard II®, and Roundup Ready® Flex with Bollgard II® cotton seed. The planting of saved Roundup Ready® Flex, Bollgard II®, or Roundup Ready® Flex with Bollgard II® cotton seed is a direct infringement of Monsanto's patent rights, including the '696 and '249 patents.

23.     Monsanto does not authorize (and specifically prohibits under the language of the Technology Agreement) the transfer of saved Roundup Ready® Flex, Bollgard II®, and Roundup Ready® Flex with Bollgard II® cotton seed. The transferring of saved Roundup Ready® Flex, Bollgard II®, or Roundup Ready® Flex with Bollgard II® cotton seed is a direct infringement of Monsanto's patent rights, including the '696 and '249 patents.

24.     The saving and replanting of patented cotton seed is an involved process requiring active, not accidental, participation and direction by the farmer.

25.     Cotton seed is contained within the cotton boll.  The lint produced by the cotton plant is an extension of the seed coat and is physically attached to the cotton seed in the boll.

26.     The harvested cotton crop is generally compressed into modules containing the harvested lint and seed from a given field or portion of a field. Those modules are assigned an identification number and eventually transported to the gin for processing.

27.     The ginning process separates the lint from the cotton seed.   Cotton lint is the primary commodity from the cotton crop, and the cotton seed is the secondary commodity of the harvest.  The lint is used in, among other things, the manufacture of clothing.

ATLANTA 5541551.1

28.   The cotton seed is used in, among other things, the production of cotton seed oil.   The entity ginning the cotton typically keeps the cotton seed as payment for separating the lint from the cotton seed.

29.   A farmer planning to save cotton seed from his harvest must direct the cotton gin operator to capture specific seed from his harvest.   This is accomplished by identifying the modules from which the gin is to capture seed.

30.   The ginning process does not remove all the lint from the cotton seed. The ginned seed containing a small amount of lint is commonly referred to as "fuzzy seed."

31.   That fuzzy seed, while viable and able to produce a cotton plant, cannot be used with modern planting equipment unless the remaining lint is removed.   To remove the residual lint from the fuzzy seed, the farmer must transfer, or have transferred, the seed to a delinter or delint the cotton seed himself.

32.   The delinting process removes the residual lint from the cotton seed with acid.   The delinted cotton seed maybe treated with a fungicide and is typically bagged for planting.

33.   For years, Chris Ponder, for himself and for Chris Ponder Farms, LLC, knowingly, intentionally, and willfully used and planted saved Roundup Ready® Flex, Bollgard II®, Roundup Ready® Flex with Bollgard II® cotton seed, or combinations thereof (which was produced from Roundup Ready® Flex, Bollgard

- 12 -

II®, and/or Roundup Ready® Flex with Bollgard II® cotton seed planted in prior years) without authorization from Monsanto.  Such planting and use by Chris Ponder and Chris Ponder Farms, LLC without authorization to do so from Monsanto violates Monsanto's patent rights.

34.     For years, Chris Ponder knowingly, intentionally, and willfully transferred and sold saved Roundup Ready® Flex, Bollgard II®, Roundup Ready® Flex with Bollgard II® cotton seed, or combinations thereof (which was produced from Roundup Ready® Flex, Bollgard II®, and/or Roundup Ready® Flex with Bollgard II® cotton seed planted in prior years) without authorization from Monsanto.  Such transfers and sales by Chris Ponder and Chris Ponder Farms, LLC without authorization to do so from Monsanto violates Monsanto's patent rights.

35.     Chris Ponder is a central figure in much of the seed saving activity in the Tift County area.

36.     More specifically, at or before the ginning process, Ponder instructed Omega Gin, through its employees and/or managers, to catch specific varieties of seed that he knew were in specific modules from his harvested cotton for the purposes of delinting that seed and for planting.

37.     The seed that Omega Gin caught for Ponder, and which Ponder later delinted and planted, contained Monsanto's Roundup Ready® Flex, Bollgard II®, and/or Roundup Ready® Flex with Bollgard II® traits.

- 13 -

38.     For years, Chris Ponder has run a delinting operation for himself and other farmers in and around Tift County, Georgia.  Ponder performed that delinting in a building and on property that he owns in Omega, Georgia.

39.     Ponder delinted the saved cotton seed with acid, which he obtained, at least in part, from other farmers as payment for his delinting services.

40.     In addition to delinting his own saved cotton seed for his own infringing use in planting and growing unauthorized cotton seed, Ponder also sold and/or transferred his saved infringing cotton seed to other farmers who expressed an interest in planting cotton seed containing Monsanto's patented technologies for an amount significantly less than the price of the same or substantially the same cotton having the same patented technologies charged by an authorized vendor.  At other times, Ponder took delivery of seed caught by other farmers at Omega Farm Supply and Gin and delinted that patented seed for those farmers.

## COUNT I

### PATENT INFRINGEMENT-Patent No. 6,949,696

41.     Each and every allegation set forth in the above-numbered paragraphs is hereby incorporated by reference just as if it was explicitly set forth hereunder.

42.     On September 27, 2005, United States Patent Number 6,949,696 was duly and legally issued to Monsanto.  The '696 patent is for an invention of Chimeric Figwort Mosaic Virus-Elongation Factor 1 α Promoters and Methods of

ATLANTA 5541551.1

Using Them.  This invention is in the fields of genetic engineering and plant biology.

43.    Monsanto is the owner by assignment of all rights, title and interest in and to the '696 Patent.

44.    The Defendants infringed the '696 patent by making, using, transferring, offering for sale or selling cotton seed having the Roundup Ready® Flex trait embodying or using the patented invention without authorization from Monsanto. Defendants will continue this unlawful illegal activity unless enjoined by this Court.

45.    Defendants' infringing activities were conducted with full knowledge and with notice that the Defendants were in violation of Monsanto's patent rights.

46.    Defendants' actions have damaged Monsanto and will continue to injure Monsanto, unless and until such infringement is enjoined by this Court.

47.    Pursuant to 35 U.S.C. § 283, Monsanto is entitled to injunctive relief in accordance with the principles of equity to prevent the infringement of rights secured by its patents.

48.    Pursuant to 35 U.S.C. § 284, Monsanto is entitled to damages adequate to compensate for the infringement, although in no event less than a reasonable royalty, together with interest and costs to be taxed to the infringer.  Further, on information and belief, damages should be trebled pursuant to 35 U.S.C. § 284 in

- 15 -

light of the Defendants' knowing, willful, conscious, and deliberate infringement of the patent rights at issue.

49.    The infringing activity of the Defendants brings this cause within the ambit of the exceptional case contemplated by 35 U.S.C. § 285.  Thus, Monsanto requests the award of reasonable attorneys' fees and costs.

## COUNT II

## PATENT INFRINGEMENT-Patent No. 7,064,249

50.    Each and every allegation set forth in the above-numbered paragraphs is hereby incorporated by reference just as if it was explicitly set forth hereunder.

51.    On June 20, 2006, the '249 Patent was duly and legally issued to Monsanto for an invention in Plants Transformed to Express Cry2A δ-endotoxins.

52.    Monsanto is the owner by assignment of all rights, title and interest in and to the '249 Patent.

53.    The Defendants have infringed the '249 Patent by making, using, transferring, offering for sale or selling cotton seed having the Bollgard II® trait embodying the patented invention without authorization from Monsanto, and Defendants will continue this unlawful activity unless enjoined by this Court.

54.    Defendants' infringing activities were conducted with full knowledge and with notice that the Defendants were in violation of Monsanto's patent rights.

55.     Defendants' actions have damaged Monsanto and will continue to injure Monsanto, unless and until such infringement is enjoined by this Court.

56.     Pursuant to 35 U.S.C. § 283, Monsanto is entitled to injunctive relief in accordance with the principles of equity to prevent the infringement of rights secured by its patents.

57.     Pursuant to 35 U.S.C. § 284, Monsanto is entitled to damages adequate to compensate for the infringement, although in no event less than a reasonable royalty, together with interest and costs to be taxed to the infringer.  Further, on information and belief, damages should be trebled pursuant to 35 U.S.C. § 284 in light of the Defendants' knowing, willful, conscious, and deliberate infringement of the patent rights at issue.

58.     The infringing activity of the Defendants brings this cause within the ambit of the exceptional case contemplated by 35 U.S.C. § 285.  Thus, Monsanto requests the award of reasonable attorney's fees and costs.

## COUNT III

## CONVERSION

59.     Each and every material allegation set forth in the above-numbered paragraphs is hereby incorporated by reference just as if it were explicitly set forth hereunder.

60.     By making, using, transferring, offering to sell or selling Bollgard II®
cotton, Roundup Ready® Flex cotton, and Roundup Ready® Flex with Bollgard
II® cotton seed without authority, the Defendants intentionally and wrongfully
exercised dominion, ownership and control over Monsanto's patented seed
technologies which were the property of Monsanto under the terms of the '696
and '249 patents and which are only legitimately available to third parties through
a license agreement with Monsanto.

61.     As a result, Monsanto is entitled, at a minimum, to damages equal to the
value of the Roundup Ready® Flex, Bollgard II®, and Roundup Ready® Flex with
Bollgard II® seed at the time of the conversion; which is an amount equal to the
applicable technology fee and the purchase price which the Defendants would
otherwise have been required to pay.

62.     Defendants' conversion of Monsanto's property rights was malicious and
willful, entitling Monsanto to punitive damages.

## COUNT IV

## <u>UNJUST ENRICHMENT</u>

63.     Each and every material allegation set forth in the above-numbered
paragraphs is hereby incorporated by reference just as if it were explicitly set forth
hereunder.

ATLANTA 5541551.1

64.     The Defendants' unlawful conduct has resulted in a benefit being conferred upon the Defendants, and the Defendants have appreciated the benefit in that they unlawfully made, used, sold and/or offered to sell, or otherwise used transferred unlicensed Roundup Ready® Flex, Bollgard II®, and Roundup Ready® Flex with Bollgard II® cotton seed, in at least 2013, in contravention of Monsanto's patent rights and in violation of the license agreement system.

65.     As a result, the Defendants have been unjustly enriched and obtained benefits and profits that in equity and good conscience belong to Monsanto.

66.     Defendants' acceptance and retention of this benefit under the circumstances renders the Defendants' retention of these benefits inequitable.

67.     As a result, Monsanto is entitled to damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Monsanto prays that process and due form of law issue to the Defendants requiring them to appear and answer the allegations of this complaint, and that after due proceedings are had, there be judgment in favor of Plaintiffs and against the Defendants, providing the following remedies to Plaintiffs:

1. Entry of judgment that the Defendants are infringing and have infringed the '696 and '249 patents, and that such infringement has been unlawful, willful and deliberate;

ATLANTA 5541551.1

2. Entry of judgment for damages, together with interest and costs, to compensate Monsanto for the Defendants' patent infringement;

3. A finding that this case exceptional under 35 U.S.C. § 285, thereby trebling of damages awarded for the infringement of patents together with reasonable attorneys' fees;

4. Entry of judgment for damages, together with interest and costs, to compensate Monsanto for the Defendants' conversion of Plaintiffs' property rights;

5. Entry of a punitive damages award against the Defendants for their willful and malicious conversion of Monsanto's property;

6. Entry of judgment for damages, together with interest and costs to compensate Monsanto for Defendants' unjust enrichment and the profits obtained that in equity and good conscience belong to Monsanto;

7. Entry of a permanent injunction against the Defendants to prevent them from making, using, saving, cleaning, delinting, planting, selling, offering to sell or otherwise transferring, any of Monsanto's proprietary technologies, without express written permission from Monsanto;

8. Entry of judgment for costs, expenses, and reasonable attorneys' fees incurred by Monsanto; and

9. Such other relief as the Court may deem appropriate.

ATLANTA 5541551.1

Respectfully submitted this 5th day of February, 2014.

                             */s/ Thurbert E. Baker*
                             Thurbert E. Baker
                             Georgia Bar No. 033887
                             Gregory S. Brow
                             Georgia Bar No. 086422
                             Jeremy T. Berry
                             Georgia Bar No. 055455

MCKENNA LONG & ALDRIDGE LLP
303 Peachtree Street, Suite 5300
Atlanta, Georgia  30308
(404) 527-4000
(404) 527-4198 (facsimile)
tbaker@mckennalong.com
gbrow@mckennalong.com
jberry@mckennalong.com

Daniel C. Cox
Missouri Bar No. 38902
(pro hac admission application
forthcoming)
Jeffrey A. Mason
Missouri Bar No. 60244
(pro hac admission application
forthcoming)
Matthew S. Bober
Missouri Bar No. 59825
(pro hac admission application
forthcoming)

THOMPSON COBURN, LLP
One US Bank Plaza
St. Louis, Missouri  63101
314-552-6000
314-552-7000 (facsimile)
dcox@thompsoncoburn.com
jmasson@thompsoncoburn.com
mbober@thompsoncoburn.com

## <u>CERTIFICATE OF TYPE SIZE AND STYLE</u>

Counsel for Plaintiff hereby certifies that the size and style of the type used

in the foregoing **COMPLAINT FOR DAMAGES AND INJUNCTIVE**

**RELIEF** is Times New Roman: 14 point.


/s/ *Thurbert E. Baker*
Thurbert E. Baker